**STATE of Missouri, Respondent,**

v.

**Carolyn WILLIAMS, Appellant.**

No. 76138.

Supreme Court of Missouri,
En Banc.

Feb. 22, 1994.

Laura G. Martin, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

LIMBAUGH, Judge.

Appellant, Carolyn Williams, was convicted by a jury of robbery, first degree, and armed criminal action and sentenced to consecutive prison terms of ten years and three years, respectively. The trial court suspended execution of the ten-year sentence for robbery and ordered that Williams be placed on probation for five years *after* serving the three-year sentence for armed criminal action. Williams appealed to the Court of Appeals, Western District, which affirmed the judgment of conviction and sentence. Although this Court accepted transfer to address the propriety of postponing commencement of Williams' term of probation on the robbery count until she serves the sentence on the armed criminal action count, we now determine that we have no jurisdiction to address that issue. The judgment is affirmed.

The following facts are pertinent to this appeal: On July 3, 1991, about 2:00 a.m., Richard Scott was seated in his car using a "drive up" telephone next to a service station. Karl Liebnitz was a passenger in Scott's car. Liebnitz was on crutches because of a broken leg. As Scott was hanging up the telephone, Williams jumped into the back seat of the car and demanded money. When Scott refused to comply, Williams dove into the front seat, threw the car into park, and attempted to remove the key from the ignition. After a scuffle, Liebnitz ended up with the key.

Scott then jumped from the car, ran to the service station, and asked the attendant to call 911. For some reason, the attendant did not make the call, so Scott ran to a different pay telephone to place the call himself. De-

ciding not to wait for the operator, he ran back to the car. Liebnitz was still in the passenger seat, and Williams was digging through the change dish. Scott started to grab Williams, but an unidentified man came up behind him and pinned him between the car door and the car. This man told Scott, "You better leave my sister alone." Scott fought with this man for a short time, but then felt what he believed to be a knife at his throat. Scott testified that it was Williams who held the knife. She told him to give up his wallet, and then she took it from his back pants pocket and ran down the street.

Scott saw a police officer at a nearby fast food restaurant and told him about the robbery. The two of them then drove around looking for Williams. Another officer in the search stopped her, and she dropped Scott's wallet as well as a pager he had been carrying in his car. No knife was found.

In her first point on appeal, Williams asserts that the trial court erred in ordering her five-year term of probation to commence after she completed her three-year prison term for armed criminal action. She claims that § 559.036.1, RSMo Supp.1992, required the trial judge to order her probation to commence on the date she was sentenced. Although both parties address the merits of this issue, neither party addresses whether an appellate court has the power to review the terms and conditions of probation on direct appeal.

■ There is no right to appeal without statutory authority. *State v. Lynch,* 679 S.W.2d 858, 859 (Mo. banc 1984). Section 547.070, RSMo 1986, allows appeals in criminal cases from a "final judgment." A final

judgment occurs only when a *sentence* is entered. *State v. Lynch,* 679 S.W.2d at 859–60; *State ex rel. Wagner v. Ruddy,* 582 S.W.2d 692; 693 (Mo. banc 1979).[1] Probation is not part of the sentence. *McCulley v. State,* 486 S.W.2d 419, 423 (Mo.1972). Consequently, there is no right to appeal a trial judge's decision to grant or deny probation. *Benson v. State,* 504 S.W.2d 74, 76 (Mo.1974); *State v. Simmons,* 660 S.W.2d 319, 320 (Mo. App.1983). It follows that there is no right to appeal the terms and conditions of an order of probation. Therefore, we do not have appellate jurisdiction to review the merits of Williams' first point.[2]

■ Next, Williams asserts that the trial court erred in overruling her motion for judgment of acquittal or, in the alternative, for a new trial, and in sentencing Williams on the robbery and armed criminal action convictions. Williams disputes that the State's evidence was sufficient to prove that she used or threatened to use a dangerous instrument during the course of the robbery as required under § 569.020.1, RSMo 1986, and § 571.015.1, RSMo 1986.

To determine whether there is sufficient evidence to support a finding of guilt, "an appellate court may not weigh the evidence but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored." *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992).

At trial, Scott testified about the presence of a dangerous instrument as follows:

1. For example, where imposition of sentence is suspended (SIS), there is no final judgment and therefore, no right to appeal. *Yale v. City of Independence,* 846 S.W.2d 193, 194–95 (Mo. banc 1993); *Lynch,* 679 S.W.2d at 862.

2. Although terms and conditions probation is not subject to review on direct appeal, Williams has other remedies available to correct unlawful terms of conditions of probation. She may seek relief from the trial court, itself, to terminate the probationary period at an earlier date as authorized under § *559.036.2, RSMo Supp.1993.* If that tack is unsuccessful, she may wait until the time has run on what she believes to have been the lawful period of probation and then seek a

writ of prohibition to prevent the trial court from imposing any further probationary period or from revoking probation. *See State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186, 188 (Mo. banc 1977); *State ex rel. Musick v. Dickerson,* 813 S.W.2d 75 (Mo.App.1991). Furthermore, if Williams is incarcerated under an order revoking probation entered after the term of probation has run (or should have run), she may seek relief by writ of habeas corpus. *See Green v. State,* 494 S.W.2d 356 (Mo. banc 1973); *Jones v. State,* 471 S.W.2d 166 (Mo. banc 1971). These remedies are sufficient to protect the claims which Williams now raises on appeal.

Q [Prosecuting Attorney]: What happened when this [unidentified] man grabbed you?

A [Scott]: We started fighting in between—I was pinned in between the car and the door, and he was in on me, and we were fighting back and forth. And that's about the time that I felt something at my throat.

Q: Do you know what that was?

A: I believe that was to be a knife. Out of all the confusion and everything I really didn't see it, because I just—everything was happening so quickly.

Q: Now, do you know who held the knife to you?

A: The lady sitting right here [pointing to Williams].

\* \* \* \* \* \*

Q: Sir, I have just one final question. Is this the person who held a knife to you and took your wallet?

A: Yes. It is.

Q: Any question in your mind about that?

A: No.

\* \* \* \* \* \*

Q: [Defense Counsel]: When was the next time you saw [Williams after you started fighting with the unidentified man]?

A: [Scott]: When she held a knife to my throat.

Q: So you didn't get an opportunity to see her with the knife in your car?

A: I didn't get an opportunity to see her in my car? Yes. I saw her in my car.

Q: No, with a knife.

A: No.

\* \* \* \* \* \*

Q: Okay, so were you against the open driver's door?

A: I was pinned in between the opened door and the—it's like it makes a V when you open the door? I was penned [sic] in there.

Q: So she [Williams] gets out?

A: Right.

Q: You see her with a knife at that time?

A: No. I didn't see her with a knife until she came around in front of me and held it up to my throat.

\* \* \* \* \* \*

Q: And [Williams] is doing what?

A: Holding a knife to my throat telling me I better give it up.

\* \* \* \* \* \*

Q: [Williams] walked around [the unidentified man]?

A: Yes. She got on the other side of the door of me.

Q: Did you see her with a knife at that time?

A: I saw her reach up to my neck with something.

Q: My friend, I know she pulls out a knife and puts it at your neck, okay?

A: Yeah.

\* \* \* \* \* \*

Q: Okay. When [Williams is] walking around, do you see a knife?

A: I saw the knife right when she got over to the other side of the car door.

Q: Kind of like when she went behind the guy?

A: Right.

Q: Okay. And describe for the jury what the knife looked like.

A: I really didn't see the knife. The knife was taken straight up to my throat and held there. And when she finally took the knife away, she took it away so quick she took off running. I never really found the knife.

Q: Are you sure it was a knife?

A: Yes. I'm positive it was a knife.

Q: Why are you sure?

A: 'Cause I felt a sharp instrument to my throat.

Q: But you didn't see a blade?

A: I saw it was a knife.

Q: Okay. I want you to describe that.

A: Describe the knife?

Q: Right.

A: It was a regular old knife.

Q: Well, there's—

A: It's just like a steak knife.

Q: Well, how long a blade did it have?

A: I really couldn't tell you that.

Q: Well—

A: It was long enough to clear my throat.

\* \* \* \* \* \*

Q: And you say [Williams] actually stuck it?

A: Held it to my throat long way.

\* \* \* \* \* \*

Q: Now, I want you to demonstrate to the jury using this as a knife as far as Ms. Williams putting that knife to your throat.

A: She was on my right, so she came up just like that (demonstrating), and told me to give it up.

Q: And did you—did she hold you like that by the arm?

A: I really don't recall. I just recall the knife going to my throat.

Q: Did you try to move away?

A: Actually, I grabbed her hand to keep her from putting pressure on my neck. I tried to push her arm away from my neck.

Liebnitz also testified that Williams "pulled out a knife" during the course of the robbery. He described the knife as "a butcher knife." He said that Williams held the knife to Scott's throat and started going through his pockets to get his wallet.

Based on this record, and in light of the above-stated standard of review, we hold that there was substantial evidence from which the jury could find beyond a reasonable doubt that Williams used a dangerous instrument during the course of the robbery. Therefore, the trial court did not err in overruling Williams' motion for judgment of acquittal or, in the alternative, for a new trial.

 In her final point, Williams claims that the trial court plainly erred in submitting to the jury Instruction Number 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Williams contends that this instruction violated her right to due process because it authorized a conviction based on a quantum of proof less than proof beyond

a reasonable doubt. Instruction Number 4, which contains the exact language of MAI–CR3d 302.04, has been repeatedly upheld by this Court. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Mease*, 842 S.W.2d 98, 112 (Mo. banc 1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). This point is denied.

The judgment is affirmed.

All concur.