**AFFIRMED; and Opinion Filed June 23, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00530-CR

### ALBERT AYALA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 5
### Dallas County, Texas
### Trial Court Cause No. F-1142504-L

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Schenck
Opinion by Justice Schenck

Appellant Albert Ayala, Jr. appeals his conviction for capital murder. In four issues, appellant argues the evidence is legally insufficient to support his conviction and lodges several complaints relating to the jury charge. We affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

William Joseph ("Billy") Bailey lived modestly from a trust established by his mother for his benefit that provided monthly support payments. Unfortunately, Billy had a drug habit and at some point began to live in his car, a 1999 Honda Accord. Billy developed unhelpful friendships, including a relationship with a woman by the name Angie Vasquez. Angie was Danny Ayala's girlfriend. Danny and Adam Ayala are appellant's brothers. Billy apparently knew appellant and his brothers as well and would occasionally give them rides in his car.

On or about August 26, 2011, Angie Vasquez, appellant, and his brothers, Danny and Adam, were at the apartment of Vicki Martinez, appellant's cousin. The Ayalas hatched a plot to rob Billy of his car. Danny told Angie to call Billy and suggest that she, Angie, needed a ride. Angie borrowed Vicki's cell phone and used it to send a text message to Billy. Billy arrived and quickly discovered that he had been lured under false pretenses. A dispute ensued, during which he refused to take the Ayalas "nowhere." Angie walked away as the Ayala brothers forced Billy into the back seat and drove away from the scene.

Billy was never seen alive again.

Owing to the combined efforts of the Texas Rangers and the Mesquite Police Department, Billy's missing-persons case eventually led to the discovery of his remains. Utilizing call records for Billy, Vicki, and appellant between 11:00 p.m. the night of August 26 and 1:00 a.m. in the morning of the following day, and triangulating from known cell-phone-tower sites, investigators found decomposed remains consisting of approximately sixty percent of a human skeleton in a wooded area near the intersection of Interstates 45 and 20. The officers also found knives at the scene. Dental records later confirmed that the remains belonged to Billy.

Nita Vasquez, the daughter of Angie Vasquez, cooperated with the investigation and testified at trial. On the evening of, and shortly after, the robbery and kidnapping, Nita had also been present at Vicki's apartment and had been privy to the Ayalas' plan to "rough up" and rob Billy. Following the assault and kidnapping, Nita attempted to contact the men, borrowing Vicki's cell phone that created the phone records used to locate Billy's remains. At one point, when she called Billy's cell phone, someone answered it but did not speak, leaving the connection open for some time during which Nita heard Danny and Albert talking about having murdered Billy.

The following day, Nita and Angie met Danny. He was driving Billy's car. Nita observed blood stains in the carpet on the back seat. When she asked Danny what had happened, he answered that she would not see Billy again. Nita then observed all three Ayala brothers, aided by Angie, chopping Billy's car into component parts. Using information obtained from Nita, investigators later identified the auto shop in Mesquite where the Ayalas had sold an engine and transmission belonging to a Honda Accord. The owner of the shop recalled purchasing the parts from two men and one woman whom he readily identified as Nita as she was seven-months pregnant at the time of the offense. The investigators tenaciously worked backwards from the serial and VIN numbers on the various recovered parts and established that the parts had come from Billy's car.

In the weeks following the abduction and murder, appellant placed two calls to his girlfriend's aunt during which he disclosed that he had killed someone—ostensibly as part of a failed plan to help his girlfriend who was herself in prison—and feared the death penalty as a result.

## DISCUSSION

In his first issue, appellant argues the trial court erred in not instructing the jury in connection with the testimony of Nita that she was an accomplice as a matter of law, rather than instructing that she could be considered an accomplice as a matter of fact. In his second issue, he challenges the sufficiency of the evidence. In his third issue, appellant argues the trial court erred in submitting a charge to the jury that presented two alternate grounds, under either of which the jury could find appellant guilty of capital murder. In his final issue, appellant argues the second paragraph of the charge did not track the indictment or satisfy the definition of capital murder, but instead submitted the separate offense of criminal conspiracy. We first consider his challenge to the sufficiency of the evidence.

–3–

## I. Legal Sufficiency of the Evidence

When conducting a legal sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001). After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to an essential element. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

A person commits the offense of capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). Evidence is sufficient to support a capital-murder conviction if it shows an intent to obtain or maintain control of property that was formed before *or contemporaneously with* the murder. *Shuffield v. State*, 189 S.W.3d 782, 791 (Tex. Crim. App. 2006). The State must prove a nexus between the murder and theft—in other words, that the murder occurred in order to facilitate the taking of the property. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986).

Texas law draws no distinctions between principals and accomplices. TEX. PENAL CODE ANN. § 7.01. A person is thus criminally responsible not only for his own conduct but also for an offense committed by the conduct of another if while acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). This holds equally true in capital-murder cases. A defendant may be convicted of capital murder as a party to the offense if the jury finds that (1) the defendant conspired with the group to commit robbery, (2) the murder occurred in

furtherance of the robbery, and (3) the murder should have been anticipated as a result of carrying out the robbery. *Ex parte Martinez*, 330 S.W.3d 891, 902 (Tex. Crim. App. 2011).

Viewed through this lens, we have little difficulty finding sufficient evidence to support appellant's conviction. Patricia Wolynski, the aunt of appellant's girlfriend, testified she participated in a recorded phone conversation between herself and appellant on August 31, 2011. She stated appellant told her that he had "f***ed up so bad" and "if I get caught, I'm going to get the death penalty, I can tell you that much." Patricia further stated that appellant told her, "I tried to come up with the money somehow, but it backfired on us." Patricia testified she asked if someone was "getting hurt or anything," and appellant responded "[t]hey won't feel any more pain." She then asked appellant what he had done and in response he spelled out "K-I-L-L." When she questioned appellant whether it was a mistake, he responded that he acted "out of rage," was "just in a desperate mood," and "needed the money." Appellant called Patricia again a few days later. That call was also recorded. During this conversation, Appellant stated that he made seventy-five dollars as a result of the killing. David Hernandez, appellant's former brother-in-law, testified to a conversation with appellant during which he related that he had done "something bad," that he "was sitting in the back seat" and "stabbed somebody."

Several witnesses, including Vicki and Nita, testified to personally observing appellant and his brothers assault and kidnap Billy. They also saw appellant in Billy's car as they all fled. Nita testified her mother told her that appellant and his brothers planned to "rough Billy up" and that when she attempted to call Billy's phone, someone inadvertently answered. With the line open, Nita overheard Danny and appellant discussing whether they had "got[ten] everything" or "if they'd left something behind." Later, police were able to locate Billy's remains by using records of cell phone calls to Billy and appellant's brother, Danny. Nita also testified that she observed them all dismantling Billy's car and selling its parts. When, with Nita's assistance, the

police traced the parts to a Mesquite business, the proprietor confirmed that he received them from two males accompanied by a pregnant woman he identified as Nita.

This and other record evidence more than suffices to support a reasonable juror's conclusion that (1) appellant, acting intentionally and with his two brothers' assistance, intended to assault and rob Billy and (2) during the course of that attack appellant or one of his brothers killed Billy with a knife, later recovered alongside Billy's body. Given the advanced plan to use physical force and the presence of the knives, the jury was within its discretion in concluding that any participant in the attack should have reasonably anticipated Billy's death. *See Ex parte Martinez*, 330 S.W.3d at 902.

Accordingly, we overrule appellant's second issue.

## II. Alleged Jury Charge Errors

In reviewing charge error, we must first determine whether error exists. *Druery v. State,* 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved by a timely objection or request below. *Id.* Error preserved by a timely objection requires reversal as long as the error is not harmless. *Id.* But when the error is not so preserved, the harm must be "egregious" before reversal is proper. *Id.* An egregious harm is one that goes to the "very basis of the case." *Id.*

### A. The Accomplice Instruction

In the first of three charge issues, appellant argues for the first time on appeal that Nita was an accomplice as a matter of law and that the trial court erred in submitting an instruction that required the jury to determine whether Nita was an accomplice as a matter of fact. We disagree and find no error, and no harm, egregious or otherwise, in the given instruction.

Texas law requires that where a conviction is based upon an accomplice witness's testimony, the testimony must be corroborated by independent evidence tending to connect the accused with the crime. *Druery*, 225 S.W.3d at 498. An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Id.* The witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it. *Id.*

A proper accomplice-witness instruction informs the jury that a witness is either an accomplice as a matter of law or an accomplice as a matter of fact. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). The evidence will dictate the type of accomplice-witness instruction that needs to be given, if any. *Id.* A witness is an accomplice as a matter of law when he or she has been charged with the same offense or a lesser-included offense, or when the evidence clearly shows that he or she could have been so charged.[1] *Id.* While the presence or absence of pending charges against the witness is readily discerned, the question of whether a witness "could have been charged" is less certain. What appears to be clear, however, is that a trial judge has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there exists "no doubt that the witness is an accomplice." *Druery*, 225 S.W.3d at 498. If the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must first determine whether the witness is an accomplice as a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

---

[1] Furthermore, a witness who is indicted for the same offense as the accused, but is promised immunity if he testifies against the accused, is an accomplice witness as a matter of law. *Blake v. State*, 871 S.W.2d 451, 462 (Tex. 1998). A person who has been indicted is not necessarily guilty, nor is a person who receives immunity from criminal charges from a prosecutor. As discussed below, a trial court's decision to instruct the jury that at witness as a matter of law appears to function effectively as a directed verdict of culpability.

Appellant cites us to no case finding charge error consisting of a trial court identifying a witness as a potential "accomplice in fact" but not declaring that witness to be, conclusively, an "accomplice in law." In determining whether any error is present in the first instance, we are mindful of our position remote from the actual events at trial. While neither party has addressed the question of the standard of review, we note that the Court of Criminal Appeals has not conclusively settled that question either. *But see Smith v. State,* 332 S.W.3d 425, 441 (Tex. Crim. App. 2011) (noting trial judge has "some discretion" in determining whether a witness is an accomplice in law but ultimately avoiding reconsideration of rule treating witness under indictment as *per se* accomplice in law); *see also Paredes v. State*, 129 S.W.3d 530, 537 (Tex. Crim. App. 2004) (noting trial court did not "abuse its discretion" in declining to give any accomplice instruction in fact or law).

Given that the Court of Criminal Appeals has repeatedly held that when the evidence *clearly* shows the witness is an accomplice witness as a matter of law, a trial court must instruct the jury accordingly, one might conclude that in determining whether the witness is an accomplice as a matter of law, the trial court is deciding a purely legal issue rather than a mixed question of law and fact.[2] *Smith*, 332 S.W.3d at 439. In either case, the task on appeal is likely to be similar. As juries in criminal cases are generally not given special issues to answer and we have no appeal from an acquittal, we will normally be forced to presume that jurors, in returning a verdict of guilty, found the witness to be an accomplice and found sufficient non-accomplice evidence to convict in any case where there is at least some evidence of complicity of a witness.[3] Thus, regardless of whether juries are given an in-law or in-fact instruction, review the harm

---

[2] While the question here arises in connection with the accused's right to a fair trial, we note that the criminal courts are historically ill equipped to render such summary adjudications. This may explain why the accomplice as a matter of law instruction has been historically confined to circumstances of a witness that has been previously convicted or is at least under a pending indictment for the same criminal offense as the accused at the time of his trial.

[3] Although there may be cases where a jury is erroneously given an accomplice-in-fact instruction despite no evidence of witness complicity, there could be no error in denying the accomplice-in-law instruction.

from any alleged error in giving an accomplice in-fact but not in-law instruction will require review to confirm the presence of non-accomplice evidence connecting the defendant to the offense. *Druery*, 225 S.W.3d at 500. Because we find the evidence of Nita Vasquez's involvement too weak to compel an instruction as a matter of law regardless of the standard, and because there was no harm, much less egregious harm to appellant, in this case, we have no further need to explore the standard of review issue.

In particular, there is little basis for treating Nita as an accomplice as a matter of "law" or "fact." The record here shows only that when Billy arrived at Vicki Martinez's apartment, Nita went to Billy's car to have a conversation with him and asked him for a lighter. Immediately thereafter, appellant and his brothers dragged Billy into the back seat and drove off. The next morning, Nita met with her mother and Danny who was driving Billy's car and observed appellant and his brothers strip Billy's car of its parts and sell the parts at different locations. To be sure, it is possible that Nita's conversation with Billy was intended to distract him, but the record contains no proof to that effect and certainly not proof sufficient to remove the question from the realm of reasonable debate sufficient to render it one of law rather than fact. It is equally possible that Nita was merely aware of the planned offense and failed to disclose it or that she was simply present during the course of appellant's offense, which would not entitle appellant to even an accomplice in fact instruction in either case. *Druery*, 225 S.W.3d at 498. There is also evidence Nita went with other individuals to sell parts from Billy's car, but it is not clear she did more than observe. *Id.* at 500. Although Nita testified she was granted immunity "for any type of criminal behavior . . . in this case," the prosecutor stated that he did not believe Nita was "involved in this criminally."

In all events, as appellant failed to request an accomplice-witness instruction or object to the jury charge as given, he must show egregious harm to secure reversal for any jury charge

–9–

error. *See Druery*, 225 S.W.3d at 504. In reviewing for egregious harm, we consider the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *DeBlanc v. State*, 799 S.W.2d 701, 709 (Tex. Crim. App. 1990) (en banc). Here, the instruction properly informed the jury that if it found Nita to be an accomplice, then it could not convict appellant on her testimony unless there is also some non-accomplice evidence connecting appellant to the offense. As that non-accomplice evidence abounded in this case, we next consider the arguments of counsel. *Id.* The State correctly reminded the jury that if it found Nita to be an accomplice, "then in order to convict Mr. Ayala of capital murder, . . . we've got to bring you more evidence besides Nita Vasquez" and fairly summarized the other evidence connecting appellant to the murder. Appellant's counsel in turn made use of the instruction, urging the jury to discount Nita's testimony on the theory that she was "in on the whole deal because her momma got her to . . . distract [Billy]." Reviewing the record as a whole, we cannot find any harm, much less egregious harm, to appellant. *Id.* Accordingly, we overrule appellant's first issue.

### B.     Application Paragraphs

Arguing his third and fourth issues together, appellant argues the jury charge presented two alternate grounds, under either of which the jury could find appellant guilty of capital murder, and that the second of these would support a conviction only as a co-conspirator to commit felony murder, not capital murder. Appellant urges that the jury charge allowed the jury to  render a general verdict on capital murder without unanimously agreeing to which act appellant was guilty of committing, either capital murder or conspiracy to commit capital murder. Appellant contends that because of the way it was charged, the jury was improperly permitted to find him either guilty of capital murder as charged in the indictment, or guilty of

conspiracy to commit capital murder under section 15.02 of the penal code, which was not charged in the indictment.

Appellant is mistaken. The court's charge did not instruct the jury to consider whether appellant was guilty of conspiracy. Under Texas law, "[a] person commits criminal conspiracy if, with intent that a felony be committed, he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and he or one or more of them performs an overt act in pursuance of the agreement." TEX. PENAL CODE ANN. § 15.02. The court's charge did not instruct the jury to consider whether appellant was guilty of the separate offense of criminal conspiracy. Instead, the court's charge merely contained an alternative "parties" charge as provided in section 7.02(b). Section 7.02(b) provides as follows.

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b).

It is well accepted that the law of the parties may be applied to a case even though no such allegation is contained in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). Additionally, regardless of whether it is pleaded in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence. *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013).

Here, the evidence showed appellant, Angie, Danny, and Adam all conspired to commit robbery of Billy's car and that appellant killed Billy in furtherance of the robbery. Thus, the jury charge properly charged appellant with two equally viable, alternative legal theories of capital murder, not two separate offenses. *See Holford v. State*, 177 S.W.3d 454, 462-63 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding that a jury charge properly permitted to find a

–11–

defendant guilty of capital murder upon a finding that either the defendant committed the capital murder or that the defendant was criminally responsible for the murder under the law of the parties or as a conspirator).  Accordingly, we overrule appellant's third and fourth issues.

## CONCLUSION

Because we have overruled all of appellant's issues, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140530F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALBERT AYALA, JR., Appellant

No. 05-14-00530-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F-1142504-L.
Opinion delivered by Justice Schenck.
Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of June, 2015.