

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110074 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Genevieve County |
| vs. | ) | |
| | ) | Honorable Wendy W. Horn |
| HUNTER HARRIS, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 8, 2022 |

### Introduction

Hunter P. Harris ("Appellant") appeals from the judgment of the trial court convicting him of first-degree involuntary manslaughter and felony possession of a controlled substance following a guilty plea. Appellant brings one point on appeal contending the trial court erred by accepting Appellant's guilty plea without a sufficient factual basis, violating Rule 24.02(e).[1] Because the trial court did not plainly err accepting Appellant's guilty plea we affirm.

### Factual and Procedural Background

On August 29, 2018, the State filed an information charging Appellant with three counts of criminal conduct: in Count I, first-degree involuntary manslaughter, in violation of section 565.024;[2] in Count II, delivery of a controlled substance, in violation of section 579.020; in Count III, possession of a controlled substance, in violation of section 579.015, RSMo 2016. On

---

[1] All rule citations are to the Missouri Supreme Court Rules (2021), unless otherwise indicated.
[2] All statutory references are to RSMo Cum. Supp. 2017, unless otherwise indicated.

June 15, 2021, Appellant pled guilty to Count I: involuntary manslaughter and Count III: possession of a controlled substance per a plea agreement.

Under the plea deal, the State agreed to dismiss Count II and recommend a sentencing cap of twelve years in the Department of Corrections. On October 19, 2021, Appellant received a sentence of ten years on Count I for involuntary manslaughter and two years on Count III for possession of a controlled substance; the sentences were ordered to run consecutively for a total term of imprisonment of twelve years at the Missouri Department of Corrections.

At the plea hearing on June 15, 2021, Appellant admitted to the essential elements of the involuntary manslaughter charge:

> COURT: First, Count I, which is the manslaughter charge, the allegations are that you did on March 6th of 2018 in the County of Ste. Genevieve, State of Missouri, you recklessly caused the death of Aaron McCarthy by providing him with heroin and/or fentanyl and leaving him after he had an adverse reaction after ingesting the drugs. Do you admit to each and every essential element of this charge?
>
> APPELLANT: Yes. Yes, ma'am.

Appellant admitted to trading drugs with Decedent. He gave Decedent what he thought was only heroin and Decedent gave him marijuana. Appellant further admitted he left Decedent after Decedent had an adverse reaction after Decedent injected himself with the drugs first time. Appellant admits Decedent had more fentanyl when Appellant left Decedent.

> APPELLANT: Okay. Me and the victim had a history of trading drugs, trading weed and heroin, and we had went and got heroin, and knowing – not knowing it was fentanyl, he had gotten fentanyl and died.
>
> COURT: Okay. Well – what is – the way – the way the charge reads is that you provided it to him.
>
> APPELLANT: Right, through trading.
>
> COURT: Okay.
>
> APPELLANT: We went and got it together, but we traded for it.
>
> COURT: Traded? I don't understand. Traded what?

APPELLANT: Drugs.

MR. LISZEWSKI (Appellant's Attorney): He had – Mr. Harris received marijuana in exchange for buttons of what was supposed to be heroin but turned out to be fentanyl. This gentleman took it at a later point. He had one episode where he had passed out and became unconscious. They had revived him, but under the circumstances and the way the law is written, he still kept the buttons, he took them, and died as a result, so that's the causation for the involuntary manslaughter.

COURT: Okay. So your client is the one who – who did the trade and got the – got the fentanyl?

MR. LISZEWSKI: My client is the one who bought the fentanyl buttons, gave them to the victim, and then the victim died.

COURT: I understand. Okay. So you gave them – so you go them and gave them to the victim?

APPELLANT: Yes.

COURT: And then he ingested them. Yes?

APPELLANT: Yes. Yes, ma'am.

COURT: Were you there when he did that?

APPELLANT: The first time. I wasn't there the – the actual time he died. No.

MR. LISZEWSKI: He had two instances, one where he ingested on the way back from Ste. Genevieve – or from the meeting place. And I don't want to speak out of turn for the prosecutor's office. The first instance he took them, he did come back and came to. They then left him, but he was left with the fentanyl buttons, and he went home and took them again, and that's – that's what we believe the evidence would have been from both sides, and died as a result.

COURT: Okay. And so you left him after certainly he overdosed at least one of two times and came back, and then he still had the fentanyl when you left?

APPLLANT: Yes.

COURT: Okay. Does that meet the elements, do you think?

MR. WILLIAMS (Prosecuting Attorney): I think so, Judge. We also have a crime lab report that – we had two substances, Judge. We had heroin and then we had fentanyl, both, so I would think that under the facts and circumstances of this case that that meets the elements for Count I.

COURT: Okay.

3

. . .

COURT: Is there any question that the victim died as a result of ingesting those controlled substances, Mr. Williams?

MR. WILLIAMS: No, Your Honor, not at all.

COURT: Hunter, do you agree with that as well?

APPELLANT: Yes, ma'am.

COURT: All right, I think I have enough for the factual basis.

The Court then accepted Appellant's plea. Appellant did not move to withdraw his guilty plea.

After sentencing this appeal followed.

**Discussion**

Appellant brings one point on appeal contending the trial court erred by accepting Appellant's guilty plea without a sufficient factual basis, violating Rule 24.02(e), which requires the court to determine there is a factual basis for the plea before entering judgment upon a plea of guilty. Before reaching the merits of Appellant's argument we must determine whether this Court has the authority to hear the claim. *State v. Simmons*, 213 S.W.3d 156, 158 (Mo. App. E.D. 2006).

*I. Authority to Hear Present Appeal*

"This Court has a duty to *sua sponte* determine" our authority to hear an issue on appeal. *Simmons*, 213 S.W.3d at 158 (citing *State v. Dunn*, 103 S.W.3d 886, 887 (Mo. App. E.D. 2003)); *see also State v. Spencer*, 569 S.W.3d 477, 480 (Mo. App. E.D. 2018) (citing *Fray v. Gabel*, 574 S.W.2d 38, 39 (Mo. App. 1978)). "No right of an appeal exists without statutory authority." *State v. Craig*, 287 S.W.3d 676, 679 (Mo. banc 2009) (citing *State v. Williams*, 871 S.W.2d 450, 452 (Mo. banc 1994)). Under section 547.070, once a final judgment is rendered, "an appeal to the proper appellate court shall be allowed to the defendant" in criminal cases.

Section 547.070 "permits an appeal from a final judgment whether the defendant pleaded guilty or was convicted after a trial." *State v. Russell*, 598 S.W.3d 133, 137 (Mo. banc 2020).

The issue before this Court is whether Appellant may directly appeal his plea of guilty claiming the trial court erred by accepting Appellant's guilty plea without a sufficient factual basis, violating Rule 24.02(e). Based on the Missouri Supreme Court's recent holding in *Russell*, we hold he may. 598 S.W.3d at 141.

The State argues a guilty plea waives appellate review of every claim of error except for challenges involving this court's subject-matter jurisdiction, the sufficiency of the charging document, and *Bazell* claims. The State also asserts Appellant's claim is not cognizable on appeal being limited to a Rule 24.035 challenge. As explained in *Russell*, these arguments fail for multiple reasons. *See id.* at 138.

The State, citing *Garris* and *Rohra*, argues "the general rule is that a guilty plea waives all nonjurisdictional defects, including statutory and constitutional guarantees." *Garris v. State*, 389 S.W.3d 648, 651 (Mo. banc 2012); *State v. Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018). These cases are not helpful to the State. The Court in *Russell* stated the "broad statements of *Rohra* and *Garris* must be limited to rulings on only the issues before the Court in those cases and, otherwise, are *dicta*." *Russell*, 598 S.W.3d at 138–39; *Rohra*, 545 S.W.3d at 347 (quoting *Garris*, 389 S.W.3d at 651).[3] Instead, *Russell* held that claims that have always been permitted to be raised in a post-conviction motion under Rule 24.035 are distinguished from claims waived by a guilty plea. *Id.* at 138. Such claims are not waived. *Id.* While *Russell* dealt with an excessive sentence, its rationale equally applies to a factual basis. Both are trial court errors permitted to be

---

[3] Even though cases referenced by the State, such as *Phillips* and *Sharp*, hold challenges to the trial court's factual basis for a guilty plea are not subject to review by direct appeal, both cases reached such a conclusion based on the general rule deemed *dicta* by the Court in *Russell*. *See generally State v. Sharp*, 39 S.W.3d 70, 72 (Mo. App. E.D. 2001) (direct appeal following guilty plea limited to issues concerning subject matter jurisdiction or the sufficiency of the charging instrument); *State v. Phillips*, 204 S.W.3d 729, 732 (Mo. App. S.D. 2000) (same).

raised in a post-conviction motion under Rule 24.035. *See, e.g.*, *Schilling v. State*, 628 S.W.3d 452, 457–58 (Mo. App. E.D. 2021); *Bibbs v. State*, 597 S.W.3d 397, 403–04 (Mo. App. E.D. 2020).

Holding the Appellant did not waive his appeal by pleading guilty per *Russell* we turn to the State's argument the Appellant is solely limited to post-conviction relief under Rule 24.035 because Rule 24.035 provides the exclusive procedure for claims that come within its terms. As the Court stated in *Russell*, "[a] closer reading of Rule 24.035 shows the error of this argument." *Id.* "Rule 24.035 by its terms defines what claims for relief may be made 'in the sentencing court.'" *Id.* (quoting Rule 24.035(a)). "Rule 24.035 provides the exclusive procedure by which [a person convicted of a felony on a plea of guilty] may seek relief in the sentencing court for the claims enumerated." *Id.* (quoting Rule 24.035(a)). Thus, as the Court concluded in *Russell*, "Rule 24.035 neither limits nor expands what claims can be raised on direct appeal, nor could it, as a procedural Court rule cannot limit a statutory right of appeal." *Id.*; *see also* Mo. Const. art. V, § 5 ("The rules [of practice and procedure] shall not change substantive rights, or the law relating to evidence, the oral examination of witnesses, juries, the right of trial by jury, or *the right of appeal*.") (emphasis added).[4]

We are acutely aware the Supreme Court in *Russell* was sharply divided four to three. We are further aware the State's position in this case regarding the Rule 24.035 issue mirrors the dissent's position in *Russell*. We are the intermediate court of appeals. This Court is constitutionally bound to follow the latest controlling decision of the Supreme Court of Missouri. *McMillan v Pilot Travel Ctr., LLC*, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016).

---

[4] The State argues Movant's "claim is unfounded and not cognizable because a sufficient factual basis is not constitutionally required." The issue before this Court is a violation of Supreme Court Rule 24.02(e), which requires a "factual basis for the plea." Rule 24.02.

Thus, Appellant can file a direct appeal asserting the plea court erred in accepting his plea without a factual basis. Further, section 547.070 provides this court with the authority to hear it.

*II. Factual Basis Supporting Plea of Guilty – Appellant's Sole Point*

In his only Point on appeal, Appellant argues the trial court erred by accepting Appellant's guilty plea without a sufficient factual basis, violating Rule 24.02(e). Appellant argues in entering a judgment against Appellant, the trial court violated Rule 24.02(e) which prohibits trial courts from entering judgment upon a plea of guilty without first determining if there was a factual basis for the plea. Appellant argues the trial court's actions permitted Appellant to plead guilty without realizing his conduct did not actually fall within the offense charged. Appellant argues the trial court was prohibited from imposing judgment on Appellant for involuntary manslaughter, unless a sufficient factual basis was first presented establishing Appellant recklessly caused Decedent's death. Appellant argues this means a sufficient factual basis must have been presented establishing Appellant consciously disregarded a risk of death to another and such disregard was a gross deviation from what a reasonable person would do in the circumstances. *State v. Beeler*, 12 S.W.3d 294, 297–99 (Mo. banc 2000); *State v. Voss*, 488 S.W.3d 97, 110 (Mo. App. E.D. 2016). Appellant further argues guilt cannot be predicated on an omission to act, unless the law defining the offense expressly so provides, or a duty to perform the omitted act is otherwise imposed by law. *State v. Shell*, 501 S.W.3d 22, 30 (Mo. App. E.D. 2016). Appellant argues distribution of a controlled substance to an individual who overdoses and said overdose results in death, standing alone, cannot support a finding of recklessly causing the death of another. *See id.* Appellant argues the trial court failed to elicit sufficient facts to establish an adequate factual basis for Appellant's guilty plea to the offense of involuntary

manslaughter violating Rule 24.02(e). Thus, Appellant argues the trial court erred in imposing judgment upon Appellant.

The State argues this Court lacks authority to consider a claim on direct appeal challenging the sufficiency of a factual basis following a guilty plea. As explained above, we conclude this Court has the authority to consider the claim.

The State also argues even if Appellant's claim may be brought on direct appeal, a sufficient factual basis was established, making Appellant's claim meritless. The State argues to find a factual basis, the plea court must find "the facts admitted establish the defendant's commission of the relevant offense." *Booker*, 552 S.W.3d at 528 (citing *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). The State notes Appellant admitted he "recklessly caused the death of [Decedent] by providing [Decedent] with fentanyl and then leaving [Decedent] after [Decedent] had an adverse reaction." The State argues Appellant admitted there was "no question" Decedent "died as a result of ingesting the fentanyl" Appellant provided Decedent. Thus, the State argues, because Appellant admitted the facts establishing he recklessly caused the death of Decedent, the plea court did not err in finding a sufficient factual basis existed.

*Standard of Review*

An issue must be properly preserved for appellate review. *State v. Chambers*, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007). Given the unique nature of the present issue, a discussion of the proper preservation procedure is appropriate. In *Russell*, where the defendant argued the trial court erred in excessively sentencing him, the Court noted the defendant properly preserved his appeal by objecting during his sentencing hearing. 598 S.W.3d at 136. Here, Appellant did not object to the trial court accepting his plea without a factual basis, violating Rule 24.02(e). Given this is a case of first impression we must decide if we can review this issue for plain error.

8

Federal appellate courts, hearing direct appeals of judgments following guilty pleas regarding insufficient factual basis, state where a defendant does not raise this argument in the trial court, plain error review is appropriate. *See, e.g.*, *United States v. McGarvey*, 2 F.4th 783, 784 (8th Cir. 2021); *United States v. Jawher*, 950 F.3d 576, 579 (8th Cir. 2020); and *United States v. Christenson*, 653 F.3d 697, 699 (8th Cir. 2011). Even though federal precedents are not binding, they constitute persuasive authority. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 533 (Mo. banc 2002).

Missouri courts recognize plain error review of unpreserved claims. *State v. Baney*, 516 S.W.3d 410, 416 (Mo. App. E.D. 2017). Where a defendant fails to preserve an issue for appeal, his claim may only be reviewed for plain error at this Court's discretion. *State v. Bowens*, 550 S.W.3d 84, 93 (Mo. App. E.D. 2018) (citing Rule 30.20). Thus, given the Court's attention to preservation in *Russell*, the factually similar federal appellate court decisions, general appellate procedure, and Appellant's failure to raise the issue of adequacy of the factual basis before the trial court, we will review for plain error.

"Plain error review is a two-step process." *State v. DeRoy*, 623 S.W.3d 778, 787 (Mo. App. E.D. 2021) (quoting *State v. Horton*, 325 S.W.3d 474, 477 (Mo. App. E.D. 2010)); *see also State v. Schmidt*, 630 S.W.3d 802, 806 (Mo. App. E.D. 2021) (citing *State v. Ashcraft*, 530 S.W.3d 579, 586 (Mo. App. E.D. 2017)). "First, the appellate court must determine whether the trial court committed an obvious error, which affected the [defendant]'s substantial rights." *DeRoy*, 623 S.W.3d at 787 (quoting *Horton*, 325 S.W.3d at 477); *see also Schmidt*, 630 S.W.3d at 806 (quoting *Ashcraft*, 530 S.W.3d at 586). "Second, if error is found in the first step, the court must determine whether that error resulted in manifest injustice or miscarriage of justice." *DeRoy*, 623 S.W.3d at 787 (quoting *Horton*, 325 S.W.3d at 477); *see also Schmidt*, 630 S.W.3d

at 806–07 (quoting *Ashcraft*, 530 S.W.3d at 587). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *State v. Brandolese*, 601 S.W.3d 519, 531 (Mo. banc 2020) (quoting *State v. Baumruk*, 280 S.W.3d 600, 608 (Mo. banc 2009)). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Brandolese*, 601 S.W.3d at 526 (quoting *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014)). "Unless manifest injustice or a miscarriage of justice is shown, an appellate court should 'decline to review for plain error under Rule 30.20.'" *Id.* (quoting *Jones*, 427 S.W.3d at 196). "The appellant bears the burden of establishing that the trial court committed an error that was evident, obvious, and clear as well as that such error actually resulted in manifest injustice or miscarriage of justice." *Schmidt*, 630 S.W.3d at 807 (quoting *Ashcraft*, 530 S.W.3d at 587).

*Discussion*

"[T]he plea court may not enter judgment on a plea of guilty until it makes a determination there is a factual basis for the plea." *Bibbs*, 597 S.W.3d at 404; Rule 24.02(e). The need for factual basis is not constitutionally required. *Bibbs*, 597 S.W.3d at 404; *Booker*, 552 S.W.3d at 528. But, a factual basis helps a judge make "the constitutionally required determination that a defendant's plea of guilty is truly voluntary." *Bibbs*, 597 S.W.3d at 404 (quoting *Booker*, 552 S.W.3d at 527). "A factual basis exists when the conduct the defendant admits establishes the defendant's commission of the offense that is the subject of the plea." *Bibbs*, 597 S.W.3d at 404 (citing *Booker*, 552 S.W.3d at 527). The defendant must understand he is admitting to conduct that is the same as the conduct outlined by the State. *Id.* The factual basis requirement "serves as a safeguard to the defendant who is in the position of pleading voluntarily

10

without an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* (citing *Booker*, 552 S.W.3d at 528).

Under section 565.024, "[a] person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another person." Under section 562.016.4, "[a] person 'acts recklessly' or is reckless when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Specifically, with involuntary manslaughter, a person acts recklessly when "there is a conscious disregard of a risk of death to another and such disregard is a gross deviation from what a reasonable person would do in the circumstances." *Shell*, 501 S.W.3d at 29 (quoting *Beeler*, 12 S.W.3d at 297–99); *Voss*, 488 S.W.3d at 110 (quoting *Beeler*, 12 S.W.3d at 297–99). "Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005) (citing *Beeler*, 12 S.W.3d at 299).

In *Voss*, the defendant was found guilty of first-degree involuntary manslaughter by a jury.[5] 488 S.W.3d at 107–08. The defendant appealed and argued "there was insufficient evidence to support his first-degree involuntary manslaughter conviction." *Id.* at 108. The evidence presented showed the defendant, a drug dealer, provided the decedent with heroin, suggested how much heroin the victim should use, helped the decedent prepare the heroin for ingestion, left the hotel room after the decedent exhibited signs of an overdose, which the defendant recognized, and failed to obtain medical help for the decedent even though defendant was concerned about the decedent's reaction to the heroin. *Id.* at 112, 113. This Court concluded

---

[5] The defendant was also found guilty of distribution of a controlled substance. *Voss*, 488 S.W.3d at 107.

there was sufficient evidence to find defendant acted recklessly, "i.e., consciously disregarded the risk of death to [the decedent] and such disregard was a gross deviation from what a reasonable person would do in the circumstances of this case." *Id.* at 113.

In *Shell*, the defendant was found guilty of first-degree involuntary manslaughter by a jury.[6] 501 S.W.3d at 26. The defendant appealed, arguing there was insufficient evidence to convict him of involuntary manslaughter. *Id.* at 29. The evidence presented showed the defendant and the decedent were friends who planned to purchase heroin together. *Id.* at 25. The defendant contacted his heroin dealer and purchased the heroin for both himself and the decedent, with the decedent planning to pay him back later in the evening. *Id.* After purchasing the heroin, the defendant and the decedent met at the defendant's home and injected themselves with heroin. *Id.* The defendant admitted he noticed the decedent was nodding out and lethargic after taking the heroin. *Id.* The defendant offered the decedent to stay the night so the defendant could keep an eye on him because he was concerned with the decedent's condition due to the amount of heroin the decedent injected. *Id.* Nonetheless, the decedent wanted to return home to meet his curfew. *Id.* The defendant drove the decedent back to the decedent's parents' house where the decedent "went inside, [started a load of laundry], told his mother he was tired and going to bed, and went to his bedroom." *Id.* The decedent was found deceased the next day. *Id.*

This Court stated to find defendant's act of delivering heroin to the decedent reckless, the defendant must have been aware of the risk that the decedent's death was probable as a result of injecting heroin. *Id.* at 33. This Court noted the experts at trial did not establish the amount of heroin injected by the decedent created a substantial risk of death. *Id.* This Court distinguished *Voss* from its case. *Id.* Specifically, this Court stated no evidence was presented to the jury showing the defendant "played such an active role in [the decedent's] heroin injection." *Id.* This

_____

[6] The defendant was also found guilty of distribution of a controlled substance. *Shell*, 501 S.W.3d at 26.

Court stated to "hold that [the defendant] acted recklessly simply by providing [the decedent] with heroin would create a per se involuntary manslaughter rule . . . absent clear legislative intent." *Id.* This Court concluded the evidence presented at trial was insufficient to show defendant's actions were reckless and thus, insufficient to convict the defendant of involuntary manslaughter. *Id.*

The question presented to this Court now is whether the trial court plainly erred in determining there was a sufficient factual basis to enter judgment upon a plea of guilty for involuntary manslaughter. "Plain errors are evident, obvious, and clear and the existence of such errors are determined by the facts and circumstances of each case." *State v. Johnson*, 220 S.W.3d 377, 385 (Mo. App. E.D. 2007) (citing *State v. Johnson*, 150 S.W.3d 132, 136 (Mo. App. E.D. 2004)). General examples of evident, obvious, and clear errors include failing to properly instruct the jury, allowing a lay or expert witness to testify regarding the ultimate issue of whether the defendant had the requisite mental state to commit a charged offense, or misapplying discovery rules. *State v. Miller*, 372 S.W.3d 455, 471 (Mo. banc 2012) (quoting *Beeler*, 12 S.W.3d at 300) (instructional error); *State v. Carlton*, 527 S.W.3d 865, 871 (Mo. App. E.D. 2017) (instructional error); *State v. Schelsky*, 597 S.W.3d 201, 210 (Mo. App. E.D. 2019) (witness testimony error, but no manifest injustice occurred); *State v. A.S.*, 648 S.W.3d 862, 866 (Mo. App. W.D. 2022) (misapplying discovery rules).

Here, the alleged error under Rule 24.02(e) is not evident, obvious, and clear enough to constitute plain error. The recited and agreed to factual basis in this case lacks some of the mitigating circumstances present in *Shell*, like the decedent refusing the offered care of the defendant insisting he be dropped off at home, dropping the decedent off with family, seeing the decedent ambulate on his own into his family home, and other evidence of the decedent

13

interacting with his family before going to bed and dying in his sleep. Here, there are some substantial similarities to *Voss*. Here, there is more than just delivery of a controlled substance. Appellant admitted to trading drugs with Decedent. Like in *Voss*, and unlike in *Shell*, Appellant admitted to leaving Decedent alone after knowing he had an adverse reaction to the drugs. Like in *Voss*, the record reflects this was a serious reaction where Decedent had "passed out and become unconscious." Even then, like in *Voss*, Appellant still left Decedent. Appellant left Decedent with more fentanyl buttons after this severe adverse reaction. Though the record vaguely mentions, through Appellant's defense attorney, Decedent went home and took more drugs, there is nothing in the record to show factual similarities to *Shell* such as how Decedent returned home, when Decedent returned home, in what state Decedent was in when Decedent returned home, or if Decedent communicated with any other individuals when he returned home.

As shown by comparing *Voss* and *Shell*, first degree involuntary manslaughter based on a death by ingesting a controlled substance is highly fact-specific. While the plea colloquy could have been more detailed demonstrating section 562.016.4 recklessness it was not devoid of facts on the recklessness issue. The Appellant admitted to more than merely providing the drugs and Decedent dying. He admitted to more than undefined "recklessness." He admitted knowing Decedent overdosed, was revived, and was left alone with more drugs before Decedent died.

Therefore, this Court cannot find the trial court obviously erred in concluding Appellant's stated actions were a factual basis for recklessness. This Court cannot conclude it is *clearly evident* the trial court *obviously* erred in determining the above actions amounted to a conscious disregard of the risk of death to Decedent and such disregard was a gross deviation from what a reasonable person would do in the circumstances of this case. "In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review." *State v.*

*Osborn*, 504 S.W.3d 865, 872 (Mo. App. W.D. 2016) (citing *State v. Flores*, 437 S.W.3d 779, 789 (Mo. App. W.D. 2014)).

Thus, this Court cannot conclude the trial court plainly erred in determining there was a sufficient factual basis to enter judgment upon a plea of guilty for involuntary manslaughter.

Point I is denied.

## Conclusion

The judgment and sentence are affirmed.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.